1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   J&J SPORTS PRODUCTIONS, INC.,              No. C-10-04167 JSW (EDL)

9              Plaintiff,                      **REPORT AND RECOMMENDATION
                                               RE: PLAINTIFF'S MOTION FOR**
10    v.                                       **DEFAULT JUDGMENT**

11  GARCIA ET AL,

12             Defendant.
                                          /
13

14        Upon consideration of Plaintiff's submissions and for the reasons set forth below, the Court

15  makes this Report and Recommendation to the Honorable Jeffrey S. White on a motion for default

16  judgment filed by Plaintiff J & J Sports Productions, Inc. against Defendants Ana and Gustavo

17  Garcia, doing business as Las Canastas Restaurant located in Hayward, California.  Plaintiff filed

18  this action against Defendants for violation of 47 U.S.C. §§ 553, 605, alleging that Defendants

19  unlawfully intercepted and intentionally exhibited the September 19, 2009 closed-circuit telecast of

20  "Number One": The Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program

21  (the "Program"), which included the main event (between Floyd Mayweather, Jr. and Juan Manuel

22  Marquez) along with undercard bouts, televised replay, and color commentary.

23        Defendants failed to file an answer to the complaint or to appear before the Court. On March

24  9, 2011, the Clerk of the court entered default against Defendants. On April 1, 2011, Plaintiff filed

25  this Motion for Default Judgment.  On April 4, 2011, Plaintiff's Motion was referred to this Court

26  for a Report and Recommendation.

27        The Court held a hearing on May 10, 2011.  Attorney Thomas Hesketh appeared on behalf of

28  Plaintiff, and there was no appearance for Defendants.  For the reasons stated at the hearing and set

forth below, it is recommended that the Court grant Plaintiff's motion and enter default judgment

**United States District Court**
For the Northern District of California

1  against Defendants in the amount of $14,926.23.

2  **Background**

3       Plaintiff obtained the exclusive nationwide commercial distribution rights to the Program

4  that was telecast on September 19, 2009. See Compl. ¶ 10. Plaintiff entered into subsequent sub-

5  licensing agreements with various commercial entities throughout North America, by which it

6  granted those entities limited sublicensing rights, specifically, the rights to publicly exhibit the

7  Program within their respective commercial establishments in the hospitality industry. See Compl. ¶

8  11. The cost of a sublicense for an establishment of the size of Las Canastas Restaurant is

9  $2,200.00. See Declaration of Joseph Gagliardi ¶ 8, Ex. 1. Plaintiff expended substantial funds in

10 marketing, advertising, promoting, administering and transmitting the Program to the licensees. See

11 Compl. ¶ 12.

12       Plaintiff also states that it has experienced a "serious erosion" in the sales of proprietary

13 programming due to signal piracy. See Gagliardi Decl. ¶¶ 4, 11. Therefore, Plaintiff has engaged in

14 a nationwide campaign to police its programming, specifically by having auditors visit locations that

15 had illegally pirated the signal. See id. ¶ 6. Mr. Gagliardi states that Plaintiff's programming cannot

16 be innocently or accidentally intercepted. See id. ¶ 9. He believes that persistent signal piracy

17 continues because there is a perceived lack of consequences due to nominal or minimal damages

18 awarded by courts. See id. ¶ 12.

19       Plaintiff alleges that Defendants unlawfully and willfully intercepted and exhibited the

20 Program at Las Canastas Restaurant with full knowledge that it was not to be intercepted by

21 commercial entities that were not entitled to do so. See Compl. ¶¶ 13-14. Investigator Horacio

22 Martinez observed the Program at Defendants' establishment. See Affidavit of Horacio Martinez at

23 1. Mr. Martinez explained that he entered Las Canastas Restaurant at 8:35 p.m., paying a $10.00

24 cover charge, and observed six televisions each showing the Program. See id. Mr. Martinez stated

25 that the capacity of Las Canastas Restaurant was approximately one hundred people. See id. at 2.

26 He did not take any counts of the number of patrons. See id. He left at 9:45 p.m. See id.

27 **Discussion**

28       A court may not enter a default judgment against an unrepresented minor, an incompetent

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1    person, or a person in military service.  <u>See</u> Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521(b)(1).

2    Here, Defendants are not minors, incompetent persons or in the military.  <u>See</u> Declaration of Thomas

3    Riley ¶ 3.

4         The general rule is that upon default the factual allegations of the complaint, except those

5    relating to the amount of damages, will be taken as true. <u>Televideo Systems, Inc. v. Heidenthal</u>, 826

6    F.2d 915, 917-918 (9th Cir. 1987) (per curiam) (citing <u>Geddes v. United Financial Group</u>, 559 F.2d

7    557, 560 (9th Cir. 1977). Necessary facts not contained in the pleadings, and claims which are

8    legally insufficient, however, are not established by default.  <u>Cripps v. Life Ins. Co. of North</u>

9    <u>America</u>, 980 F.2d 1261 (9th Cir. 1992).  Rule 55(b)(2) allows, but does not require, the court to

10   conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages

11   awarded in the default judgment.  <u>Action S.A. v. Marc Rich & Co. Inc.</u>, 951 F.2d 504, 508 (2nd Cir.

12   1991). Relief is limited to the plaintiff's specific demand in his complaint.  Fed R. Civ. P. 54(c).

13   Entry of default judgment requires the consideration of several factors, including: (1) the possibility

14   of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the

15   complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

16   material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

17   underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  <u>See</u> <u>Eitel v.</u>

18   <u>McCool</u>, 782 F.3d 1470, 1471-72 (9th Cir. 1986).

19        Here, the <u>Eitel</u> factors weigh in favor of entry of default judgment.  Most importantly, the

20   substantive claims for violation of 47 U.S.C. § 605 appears to have merit and the Complaint is

21   sufficient to state a claim for violation of § 605.[1]   Section 605 provides that:

22        No person not being authorized by the sender shall intercept any radio
          communication and divulge or publish the existence, contents, substance, purport,
23        effect or meaning of such intercepted communication to any person. No person not
          being entitled thereto shall receive or assist in receiving any interstate or foreign
24        communication (or any information therein contained) for his own benefit or for the
          benefit of another not entitled thereto.

25   47 U.S.C. § 605(a).  Here, Plaintiff alleges that Defendants were not authorized to intercept and

26

27   _____

28        [1]    Plaintiff only seeks damages for Defendants' violation of 47 U.S.C. § 605.  Therefore,
     the Court need not reach the question of whether Plaintiff's claim based on 47 U.S.C. § 553 has merit
     or whether the Complaint sufficiently states a claim for violation of that section.

**United States District Court**
For the Northern District of California

1    exhibit the Program, yet they did so at Las Canastas Restaurant.  See Compl. ¶ 13.

2           Further, Plaintiff's conversion claim also appears to have merit and the Complaint is

3    sufficient to state a claim for conversion.  Under California law, conversion has three elements: (1)

4    ownership or right to possession of property; (2) wrongful disposition of the property right of

5    another; and (3) damages.  See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906

6    (9th Cir. 1992).  Plaintiff alleges that it obtained the nationwide distribution rights for the Program,

7    and that Defendants unlawfully intercepted the Program and wrongfully converted it for their own

8    use and benefit.  See Compl. ¶ 25.  Plaintiff alleges that Defendants deprived Plaintiff of the license

9    fee to which Plaintiff would have been entitled had Defendants obtained a license from Plaintiff.

10   See id. ¶ 26.

11          The majority of the remaining Eitel factors also weigh in favor of granting default judgment.

12   First, if the motion were denied, Plaintiff would likely be without a remedy.  See Pepsico, Inc. v.

13   Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default

14   judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Second,

15   because Defendants did not file an answer to the complaint, there is nothing to suggest that there is a

16   possibility of a dispute concerning material facts.  Finally, there is no evidence that Defendants'

17   default was due to excusable neglect.

18          Weighing slightly against entry of default judgment is the fact that the amount of money

19   sought is somewhat disproportionate.  Plaintiff seeks the maximum amount of statutory damages, as

20   well as the maximum statutory amount of enhanced damages, for the interception of one Program

21   that was shown to an unknown number of people.  However, because entry of default judgment is

22   appropriate based on the other factors, the Court will address the disproportionality of the damages

23   sought in making its damages recommendation below.

24   **Damages**

25          In a civil action under § 605, the aggrieved party can recover actual damages, or statutory

26   damages of not less than $1,000 or more than $10,000 for each violation, as the court "considers

27   just." 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).  In cases where the court finds that the violation was

28   committed "willfully and for purposes of direct or indirect commercial advantage or private

4

1    financial gain, the court in its discretion may increase the award of damages, whether actual or

2    statutory, by an amount of not more than $100,000 for each violation . . . ." 47 U.S.C. §

3    605(e)(3)(C)(ii).  The Court shall award full costs, including reasonable attorney's fees, to an

4    aggrieved party.  See 47 U.S.C. § 605(e)(3)(B)(iii).

5         Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for

6    Defendants' interception and exhibition of the Program.  See, e.g., Joe Hand Promotions, Inc. v.

7    Tidmarsh, 2009 WL 1845090, at *3 (E.D. Cal. June 26, 2009) (awarding $10,000 in statutory

8    damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of

9    fifty people, there were between twenty-three and twenty-nine people there during the broadcast,

10   and there were two televisions);  J & J Sports Productions, Inc. v. Esquivel, 2008 WL 4657741, at

11   *3 (E.D. Cal. Oct. 20, 2008) (awarding $10,000 in statutory damages under 47 U.S.C. § 605 where

12   the defendant's establishment had a maximum capacity of seventy-five people, there were thirty-five

13   people there during the broadcast, and there was one television).

14        Several courts in this district, however, have found that an award of the statutory minimum is

15   appropriate where, among other things, "events are broadcast on a single occasion to a small

16   audience, and the plaintiff produces little or no evidence of financial gain."  Universal Sports

17   Network, Inc. v. Jimenez, 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002) ("The courts

18   typically have evaluated the extent to which the plaintiff demonstrated the defendant's intent to use

19   the broadcast to realize personal gain, whether the acts of piracy were repeated, and the extent of the

20   rebroadcast. Where events were broadcast on a single occasion to a small audience, and the plaintiff

21   produces little or no evidence of financial gain, courts typically have awarded only the $1,000

22   statutory minimum."); see also e.g., J & J Sports Productions, Inc. v. Medinarios, 2008 WL

23   4412240, at *2-3 (N.D. Cal. Sept. 25, 2008) (awarding $1,000 in statutory damages in case where

24   the defendant played a boxing match in violation of 47 U.S.C. § 605; there were only thirty-five

25   customers in the establishment,  there was no cover charge, there was no advertising, there was no

26   increase in cost of beverages, there was no evidence that the customers were there solely for the

27   boxing match and there was no evidence that the defendant was a repeat offender); Garden City

28   Boxing Club v. Zavala, 2008 WL 3875272, at *1 (N.D. Cal. Aug. 18, 2008) (awarding $1,000 in

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   statutory damages in case where the broadcast was made to twenty-four customers who did not pay a

2   cover charge).

3          Here, while the facts of this case do not warrant the maximum statutory award, there is

4   evidence that Defendants received at least some financial benefit from exhibiting the Program

5   because Defendants charged a cover charge.  Mr. Martinez testified that Las Canastas Restaurant

6   had a capacity of one hundred people and that the restaurant charged a $10 cover fee on the evening

7   of September 19, 2009.  See Martinez Aff. at 1.  However, there has been no showing that

8   Defendants advertised the Program to attract patrons, that any patrons in the establishment were

9   there solely to view the Program or that the cost of food and beverages was increased during the

10  Program.  On balance, because there was a cover charge to enter the restaurant during the Program,

11  it is appropriate for the Court to award slightly more than the minimum statutory damages even

12  though Defendants are first-time offenders.  Accordingly, the Court recommends an award of $2,500

13  in statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II).

14         Similarly, although enhanced damages are appropriate given the impossibility that Plaintiff's

15  signal could be innocently or accidentally intercepted (see Gagliardi Decl. ¶ 9), the Court declines to

16  recommend an award of the maximum amount of enhanced damages as sought by Plaintiff.  Some

17  district courts have found that the mere act of intercepting an encrypted signal constituted

18  willfulness, justifying significant enhanced damages.  See, e.g., Garden City Boxing Club, Inc. v.

19  Batista, 2007 WL 4276836, at *5 (E.D. N.Y. Nov. 30, 2007) ("A defendant who intercepts signals

20  and broadcast programming without authorization 'in a place of business where certain events are

21  shown to the public' is generally held to have acted willfully and for purposes of commercial

22  advantage.") (quoting Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 330 (E.D. N.Y.

23  1993)); Garden City Boxing Club v. Paquita's Café, Inc., 2007 WL 2783190, at *5 (S.D. N.Y. Sept.

24  26, 2007) ("In order for the defendant to access the transmission, it would have been necessary to

25  use an unauthorized decoder or to divert cable service or satellite signals into the establishment. The

26  illegality of any of these actions would have been apparent to the perpetrator.").

27         However, courts in this district have declined to award substantial enhanced damages in

28  cases with facts similar to the present case, concluding that "an establishment that does not promote

**United States District Court**
For the Northern District of California

1   itself by advertising the Program, does not assess a cover charge, and does not charge a special

2   premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's

3   framers." See Medinarios, 2008 WL 4412240, at *3 (awarding $5,000 in enhanced damages);

4   Zavala, 2008 WL 3875272, at *1 (awarding $5,000 in enhanced damages); Tran, 2006 WL 2691431,

5   at *2 (awarding $5,000 in enhanced damages).  Even the cases cited by Plaintiff as awarding

6   enhanced damages did not award the statutory maximum as requested here.  See, e.g., Joe Hand

7   Productions, Inc. v. Haddock, 2009 WL 2136117, at *2 (E.D. Cal. July 14, 2009) (recommending an

8   award of $25,000 in damages pursuant to 47 U.S.C. § 605, but not stating how much of the amount

9   was for enhanced damages); Kingvision Pay-Per-View v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D.

10  Colo. 2008) (awarding $15,000 in enhanced damages where the conduct in intercepting the signal

11  was willful, but there was no evidence of prior violations, no evidence of significant earnings by the

12  defendant, the loss of revenue by Plaintiff for one establishment was minimal, there was no evidence

13  of advertising and no evidence that the establishment charged a premium for food and drink).

14         Further, Plaintiff acknowledges that an award of the statutory maximum is rare.  The

15  authority Plaintiff cites does not justify such an award in this case, primarily because the reasons for

16  the large awards are not readily apparent from the opinions.  See J & J Sports Productions, Inc. v.

17  Ferreyra, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28, 2008) (recommending an award of $100,000

18  without analysis of the facts of the case except that the defendant had been sued in another action for

19  commercial signal piracy);  J & J Sports Productions, Inc. v. Lang, 2008 WL 2917165, at *1 (W.D.

20  N.Y. July 24, 2008) (awarding $100,000 in enhanced damages without any analysis of the facts of

21  the case justifying that amount).

22         In the alternative, Plaintiff urges the Court to follow the approach taken in Joe Hand

23  Promotions, Inc. v. Cat's Bar, Inc., 2009 WL 700125, *2 (C.D. Ill. March 16, 2009), where the court

24  calculated enhanced damages by multiplying the number of patrons by the commercial license fee

25  the defendants should have paid.  However, in this case, there is no indication of the number of

26  patrons, so the Cat's Bar calculation is inapplicable.  Further, Plaintiff does not explain why this

27  Court should follow this approach even if it could, because the calculation is not related to either

28  Plaintiff's loss of revenue or Defendants' unlawful gain.

1    Here, the facts do not support an award of the maximum amount of enhancement damages as

2    sought by Plaintiff, but do justify an award of some enhanced damages.  Defendants acted willfully

3    in intercepting the encrypted signal for the Program because Plaintiff's signal could not have been

4    accidentally intercepted.  Further, Defendants imposed a $10 cover charge.  At the same time, there

5    is no evidence as to whether Defendants advertised the Program or charged a premium for food and

6    drinks.  On balance, because Defendant charged a cover fee and because the act of intercepting

7    programming requires an affirmative act by Defendants to do so, and in order to deter future willful

8    violations, the Court recommends an enhanced damages award in the amount of $7,500.

9    Plaintiff also seeks damages for its conversion claim in the amount of $2,200.00, which is the

10   amount Defendants would have been required to pay had they licensed the Program from Plaintiff.

11   See Gagliardi Decl. ¶ 8.  The amount of damages for conversion is appropriate under California

12   Civil Code section 3336.  See Cal. Civ. Code § 3336 ("The detriment caused by the wrongful

13   conversion of personal property is presumed to be: First--The value of the property at the time of the

14   conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured

15   for the loss which is the natural, reasonable and proximate result of the wrongful act complained of

16   and which a proper degree of prudence on his part would not have averted; . . . .").  Accordingly, the

17   Court recommends awarding Plaintiff $2,200.00 in damages for conversion.

18   Plaintiff also seeks an award of fees and costs associated with this case.  See 47 U.S.C. §

19   605(e)(3)(B)(iii) (mandating "recovery of full costs, including awarding reasonable attorneys' fees

20   to an aggrieved party who prevails" in an action under 47 U.S.C. § 605(a)).  On May 16, 2011,

21   Plaintiff's counsel filed a declaration stating that Plaintiff had incurred costs in the amount of

22   $905.00, consisting of $400.00 for investigative costs, $350.00 for the court filing fee, and $155.00

23   for service of process charges.  See Riley Decl. ¶ 10.  Plaintiff's counsel also incurred fees in the

24   amount of $1,821.23.  See id. ¶ 11.  These costs and fees are reasonable and should be awarded.

25   **Conclusion**

26   The Court recommends granting Plaintiff's Motion for Default Judgment in the total amount

27   of $14,926.23, consisting of $2,500.00 in statutory damages and $7,500.00 in enhanced statutory

28   damages based on Defendants' violation of 47 U.S.C. § 605, $2,200.00 for conversion, and

**United States District Court**
For the Northern District of California

8

1  $2,726.23 in fees and costs.

2        Any party may serve and file specific written objections to this recommendation within

3  fourteen days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b);

4  Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to

5  appeal the District.

6

7  Dated: May _18__, 2011

   *Elizabeth D. Laporte*
   _____
   ELIZABETH D. LAPORTE
8  United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California